**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norman A Brown,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-01917-PHX-DJH<br><br>**ORDER** |

    Mr. Norman A. Brown ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 19 at 1). Plaintiff has filed an Opening Brief, the Commissioner, a Response, and Plaintiff a Reply (Docs. 14; 15; 16). Upon review of the briefs and the Administrative Record (Doc. 16, "AR"), the Court affirms the ALJ's decision.

**I.**  **Background**

    Plaintiff filed for SSI and DIB benefits and alleged a disability onset date of February 13, 2019. (AR at 60). These claims were denied by the Commissioner. (*Id*.) After this denial, the Administrative Law Judge (the "ALJ") held a telephonic hearing to determine whether Plaintiff is disabled. (*Id*.) The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from the alleged onset date through the date of its decision. (*Id*. at 61). To reach this conclusion, the ALJ utilized a five-step process developed by the SSA for determining whether an individual is

disabled. (*Id.*)

## A. The ALJ's Five-Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled for purposes of the Social Security Act ("the Act"):

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. *Id.* § 404.1520(a)(4)(v).

After applying this five-step process, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (AR at 61; 67). At the first and second steps of the five-step inquiry, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

since the alleged onset date of disability and that he had several severe impairments, including: lumbar degenerative disc disease status-post fusion, distal clavicle fracture, right shoulder bursitis, trigeminal neuralgia, and obesity. (*Id.* at 63). At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*)

At step four, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and/or carrying 25 pounds occasionally and 20 pounds frequently. He can stand and/or walk six hours in an eight-hour work day and sit six hours in an eight-hour work day. He can occasionally climb, stoop, kneel, crouch, and crawl along with frequently balance. He can occasionally reach overhead with the right upper extremity." (*Id.*)

Finally, at step five, the ALJ found that Plaintiff is "capable of performing past relevant work as a security officer and insurance investigator. This work does not require the performance of work-related activities precluded by" Plaintiff's RFC. (*Id.* at 66). Based on this five-step evaluation process, the ALJ ultimately concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 13, 2019, through the date of this decision." (*Id.* at 67). Now, the Court must determine whether the ALJ's decision was erroneous.

## II.     Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by "substantial evidence" or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. Substantial evidence is the type of evidence that would suffice, at

trial, to avoid a directed verdict. *See Nat'l Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

### III. Discussion

Plaintiff argues that (1) the ALJ erred in failing to include any limitations related to Plaintiff's trigeminal neuralgia in the RFC finding contrary to his own finding that the impairment is "severe"; and (2) the ALJ erred when he did not acknowledge or evaluate the conflicts between the vocational expert's (VE's) testimony and the "Dictionary of Occupational Titles" ("DOT"). (Doc. 19 at 1–2). The Court will address each argument in turn.

### A. Plaintiff's Limitations

Below, the ALJ found that Plaintiff's trigeminal neuralgia was a severe impairment at the second step of the five-step process. (AR at 63). In explaining that Plaintiff has the RFC to perform light work, the ALJ noted that Plaintiff "experiences daily sharp facial pain related to his trigeminal neuralgia" and that the pain "usually lasts only a few seconds, but brushing his teeth, chewing, speaking, and washing his face can aggravate his pain." (*Id.* at 65). The ALJ also noted that medication "provides 'some mild improvement' of

this pain." (*Id*.) Utilizing this evidence and other evidence in the record, the ALJ found that "the allegations regarding the nature of [Plaintiff's] symptoms, such as occasional back pain, [are] supported by the medical and other evidence in the file" but that "the contentions regarding the severity and the related functional restrictions contradicts the medical and other evidence within the file." (*Id*. at 66). Plaintiff argues that it was "patently unreasonable" for the ALJ to exclude the limitations his trigeminal neuralgia cause from Plaintiff's RFC. (Doc. 19 at 9).

The ALJ did not exclude Plaintiff's trigeminal neuralgia from its RFC finding. The ALJ specifically mentioned it, recognized that it is a severe impairment at step-two and noted that Plaintiff experiences mild improvement with medication. (AR at 65). Even recognizing this impairment, the ALJ found that he could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and/or carrying 25 pounds occasionally and 20 pounds frequently." (*Id*. at 63). The ALJ accounted for this by recognizing that Plaintiff's "continued pain in the right shoulder support limiting him to occasionally reaching overhead with the right upper extremity." (*Id*. at 65). The ALJ also stated that "the objective medical records fail to support the severity of impairments and symptoms alleged, but correspond with the given residual function capacity herein." (*Id*. at 64).

The ALJ further supported its findings by citing to reports authored by treating physicians at the Neurology and Sleep Medicine Association. (*Id*. at 65). Therein, his physicians note that Plaintiff's trigeminal neuralgia started in 1983 due to a traumatic brain injury—long before the alleged onset date of disability, and that Plaintiff's pain is relieved with medication. (AR at 496). However, his physicians also note that Plaintiff still has breakthrough pain "that can be severe and bring him to tears." (*Id*.) In this report, authored in 2020, Plaintiff's physicians also state that they will increase his medication and that they recommended a surgery consultation to discuss other options for his pain. (*Id*. at 497).

From the above, the Court finds that the ALJ provided sufficient reasoning in its order for this Court to meaningfully determine whether its conclusions were supported by substantial evidence. *Treichler*, 775 F.3d at 1099 (stating that the ALJ "must provide some

reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). "The Court does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate h[is] symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021). As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Here, the evidence is susceptible to more than one rational interpretation, therefore, the ALJ's conclusion must be upheld. Furthermore, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ did so here. Thus, the Court cannot conclude that the ALJ erred in reaching its RFC determination.

### B. The Vocational Expert's Testimony

Plaintiff next argues that the ALJ erred when he did not acknowledge or evaluate the conflicts between the VE's testimony and the DOT's maximum requirements for an occupation. (Doc. 19 at 10). Plaintiff states that, if the VE's testimony conflicts with the descriptions set forth in the DOT, the ALJ must identify, acknowledge, and discuss it in the decision. (*Id*.)

At step-five of the five-step evaluation process, the ALJ considers the applicant's background and RFC to decide if the applicant can make an adjustment to some other available job. *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016) (internal citation omitted). To aid in making this determination, the ALJ may rely on an impartial VE to provide testimony about jobs the applicant can perform despite his or her limitations. *Id.* at 806–07. The DOT is a "resource compiled by the Department of Labor that details the specific requirements for different occupations, [which] guides the [ALJ's] analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile

the conflict before relying on the expert to decide if the claimant is disabled." *Id*. at 807 (citing SSR 00-4P, 2000 WL 1898704, at *2). Not all potential conflicts between a VE's job suitability recommendation and the DOT's listing of "maximum requirements" for an occupation will be apparent or obvious. So, an ALJ "need only follow up on those that are." *See id*. at 808.

"For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808. This is not to say that ALJs are "free to disregard the [DOT's] definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id*. "Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id*.

At step-five, the ALJ found that Plaintiff is "capable of performing past relevant work as a security officer and insurance investigator. This work does not require the performance of work-related activities precluded by" Plaintiff's RFC. (AR at 66). The ALJ relied on testimony from a VE; who testified that, given Plaintiff's RFC, Plaintiff's suitable past work could be classified as: "Security Officer (DOT 372.667-034), light work in exertional level" and "Insurance Investigator (DOT 241.267-030), sedentary work in exertional level." (*Id*.) Based on this, the ALJ found that "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work . . . the claimant is able to perform it as ***actually performed***." (*Id*. (emphasis added)). The ALJ further stated that the VE's testimony was consistent with the DOT's maximum requirements and found that this testimony was reliable because of the VE's credentials consisting of "an education in rehabilitation and job placement, her over 30 years of practical experience, and her continued work in job placement." (*Id*.)

Plaintiff argues that the DOT's maximum requirements lists these jobs as requiring frequent reaching and that "reaching" is defined as "extending hand(s) and arm(s) in ***any***

direction." (Doc. 19 at 11) (emphasis added). Due to this, Plaintiff argues that there is a conflict regarding the VE's testimony and the DOT descriptions of these occupations. (*Id.* at 11–12). Plaintiff acknowledges in his brief, however, that the ALJ inquired about conflicts and that the VE denied there were any. (*Id.* at 12).

Indeed, there was no "apparent or obvious conflict" between the VE's testimony and the DOT's general statement that the occupations of security officer or insurance investigator require frequent reaching. *See Gutierrez*, 844 F.3d at 808. While "reaching" connotes "the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Id.* (citing SSR 85-15, 1985 WL 56857, at *7 (1985)). The reality of these occupations is that they do not require "frequent" overhead reaching, which the ALJ accounted for the RFC he assigned to Plaintiff. Plaintiff also stated as much in his original work history report. (AR at 348; 350 (stating that, in either occupation of insurance investigation or providing security, Plaintiff was required to reach about "1/2" of the time at work in any direction)). Thus, because there was no "apparent or obvious conflict" between the VE's testimony and the DOT's maximum requirements, the Court cannot conclude that the ALJ erred in failing to address this unapparent, non-obvious conflict—especially in light of his RFC finding and inquiry to the VE about any conflicts. *See Gutierrez*, 844 F.3d at 808.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge (AR at 60–67) is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 25th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge